UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUTHER BRADLEY TANSIL,

    Petitioner,

v.

Case No. 1:05-cv-592
Hon. Gordon J. Quist

CINDI CURTIN,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.    Background**

Petitioner was charged in three different criminal cases in the 17th Circuit Court: *People v. Tansil*, Nos. 02-08048, 02-08235 and 02-08236. In No. 02-08048, petitioner was charged with armed robbery, felony firearm, felon in possession of a firearm, and being a second felony offender, based upon events that occurred on August 1, 2002. Plea Trans. at 4-5. In No. 02-08235, petitioner was charged with armed robbery, felony firearm, felon in possession of a firearm, and being a second felony offender, based upon events that occurred on August 4, 2002. *Id.* at 4. Finally, in No. 02-08236, petitioner was charged with assault with a dangerous weapon and being a second felony offender. *Id.* at 5-6, 12-13; Petition at 44.[1]

---

[1] The criminal complaint alleges that the assault occurred on August 4, 2002. *See* docket no. 7.

On March 10, 2003, petitioner pled guilty to two counts of armed robbery, M.C.L. § 750.529, and two counts of felony firearm, M.C.L. § 750.227b. *See* Plea Trans. (March 10, 2003) at 12-13 (docket no. 19); *Tansil*, No. 02-08048, Judgment of Sentence (May 13, 2003) (docket no. 21); *Tansil*, No. 02-08235, Judgment of Sentence (May 13, 2003) (docket no. 21).  On May 13, 2003, petitioner was sentenced to 12 to 25 years imprisonment for each of the armed robbery convictions, and 2 years imprisonment for each of the felony firearm convictions. *Id.*

Petitioner did not move to withdraw his plea either before or after his May 13, 2003 sentencing.[2]  One year after sentencing, petitioner, through his appointed appellate counsel, applied for leave to appeal to the Michigan Court of Appeals raising two issues:

> I. Was [petitioner] denied his right to be free from unreasonable search and seizure, and his right to effective assistance of counsel by his trial attorney's failure to investigate and failure to file a motion to suppress?  US Const Am IV, VI; Mich Const Art I, § 11, 17, 20.
>
> II. Was [petitioner's] plea of guilty not voluntarily given, was he denied his right to effective assistance of counsel, and must he be allowed to withdraw the plea?  US Const Am VI, XIV; Mich Const Art I, § 17, 20.

Application for leave (docket no. 21).  The Michigan Court of Appeals denied the application for leave to appeal for lack of merit in the grounds asserted. *People v. Tansil*, No. 255553 (Mich. App. July 15, 2004) (docket no. 21).  Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which was denied on February 28, 2005. *People v. Tansil*,

---

[2] At the time petitioner was convicted and sentenced, the Michigan Court Rules (MCR) permitted him to file a motion to withdraw his plea before sentencing, M.C.R. 6.310, or after sentencing "within the time for filing an application for leave to appeal," M.C.R. 6.311(A).  Amendments to the court rules effective January 1, 2006 deleted M.C.R. 6.311(A) and amended the provisions of M.C.R. 6.310.  The amendments provide additional grounds to withdraw a plea before sentencing, and also provide that "[t]he defendant may file a motion to withdraw the plea within 6 months after sentence." *See* M.C.R. 6.310(B) and (C).

No. 126857 (Mich. Feb. 28, 2005) (docket no. 22). These two issues are now before the court in his petition seeking habeas relief.

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Petitioner has met the exhaustion requirement.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or

if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.   Discussion

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). *See United States v. Broce*, 488 U.S. 563, 569 (1989) ( "[a] guilty plea is more than a confession which admits that the accused did various acts;" rather, "it is an admission that he committed the crime charged against him") (internal quotation marks omitted). When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973). In other words, he forecloses all subsequent non-jurisdictional appeals to his conviction by pleading guilty. *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000); *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991).

The issue before the court is whether petitioner made a valid guilty plea. "A voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked" in a federal habeas action. *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A valid guilty plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) ("[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"). For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence imposed. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795-96 (6th Cir. 1991); *Hart*, 927 F.2d at 259.

When a state criminal defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary plea by producing a written transcript of the state court proceeding. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact. *Id.* A habeas petitioner "must overcome a heavy burden" to have a federal court overturn these state court findings. *Id.* at 328.

### A. Petitioner's claim that he did not understand the plea agreement

Petitioner contends that he should "be allowed to withdraw his plea because he did not understand the plea agreement." Petition at p. 29. Specifically, petitioner asserts that at the time of the plea, he "had been told that he would be sentenced within the guidelines," and "was under the understanding that my guidelines, according to a write-up, within [sic] ten to eighteen years." *Id.* at p. 28.

At the plea hearing, the trial court advised petitioner that he faced a maximum penalty of life imprisonment for each armed robbery charge and a mandatory sentence of two years for each felony firearm charge:

Q  The charges of armed robbery are felonies, each of them, and each carries a maximum penalty of life in prison or any term of years or any type of aggravated assault or serious injury involved, the Court would be required to give you at least two years on the minimum, do you understand that?

A  Yes, I do.

Q  With respect to the two counts of felony firearm, each of those require that you actually serve two years prior to the serving of any other sentence on the armed robberies, do you understand that?

A  Yes, sir.

Q  And those are felonies as well, do you understand that?

A  Yes, I do.

\*    \*    \*

Q  Furthermore, if I accept your pleas of guilty today, you will be giving up any claim that the pleas are anything other than your own choice, and you'll be giving up any claim that the plea is the result of any threats or any promises unless I'm told here today in the courtroom what they are. Do you understand that?

A  Yes, I do.

> Q      Understanding all of these rights I've just told you about, are you prepared today to give up those rights and enter pleas of guilty?
>
> A      Yes, I am. I -- I'm under the understanding though that, you know, I'm going to enter a plea of guilty, but, you know, that I would be sentenced within the guidelines.

Plea Trans. at pp. 8-11[3].

In response to petitioner's stated concern regarding sentencing guidelines, the trial judge advised petitioner that he would "have to set forth on the record some compelling reason really to sentence outside the guidelines." *Id.* at 11. The obvious implication of this comment, of course, is that a sentence outside the guidelines was possible. The court continued:

> Q      That's all I can tell you at this point in time. Do you understand that?
>
> A      Yes, sir. I was under the understanding that my guidelines, according to a write-up, within [sic] ten to eighteen years.
>
> Q      I don't know what they are, whether they've been scored properly or not. It's between you and you attorney. I haven't looked at the guidelines?
>
> A      Yes, sir.

*Id.* at 11-12.

> The court continued:
>
> Q      All right. Okay, so was it your intention here today to plead guilty to these --
>
> A      Yes, sir.
>
> Q      -- various charges we've talked about?
>
> A      Yes, sir.
>
> Q      And the two separate counts of armed robbery, how do you wish to plead?

---

[3]Petitioner was sentenced within the guidelines as ultimately calculated by the court. *See* Sentencing Trans. at 12-13.

  A  I'll plead guilty.

  Q  And to two separate counts of felony firearm, how do you wish to plead?

  A  I'll plead guilty.

*Id.* at p. 12.

  The court then asked the prosecutor if there was "plea bargaining" in the case, to which the prosecutor replied:

> Yes, there is, your Honor. Upon [petitioner's] guilty plea to the charge of armed robbery and being a felon who used a firearm in the commission of a felony in case number 02-08048-FC, the People are going to dismiss the charge of felon in possession of a firearm and the supplement charging him as a second felony offender. In case number 02-08235, will [sic] Tansil is pleading guilty to the crime of armed robbery and using a firearm during the commission of a felony. The People are going to dismiss the charge of felon in possession of a firearm and the supplement charging him as a second felony offender. In case number 02-08236, that case charges him with the crime of felonious assault and being a second felony offender, that case will be dismissed in its entirety.

*Id.* at pp. 12-13.

  Petitioner's counsel stated that this was the "full agreement" between the parties. *Id.* at p. 13. Petitioner confirmed that this was the agreement:

  Q  Is that the full agreement as you understand it here, [petitioner]?

  A  Yes, your Honor.

  Q  Has anyone promised you anything more than what's just been said in order to get you to plead guilty here today?

  A  No.

  Q  Has anyone threatened you in any way to get you to plead guilty?

  A  No, sir.

  Q  Is it your own choice to do so?

> A      Yes, sir.
>
> Q      Are you pleading guilty freely and voluntarily?
>
> A      Yes, sir.
>
> Q      Are you pleading guilty because you are, in fact, guilty?
>
> A      Yes, sir.

*Id.* at pp. 13-14. Certainly, petitioner received considerable benefits for pleading guilty, in terms of charges dropped.

After petitioner testified that he committed armed robberies on both August 1, 2002 and August 4, 2002, the court asked counsel if any other inducements were communicated to petitioner "in order to have him plead guilty today." *Id.* at pp. 14-16. This question led to an exchange between the court, defense counsel, the prosecutor and petitioner, regarding the sentencing guidelines and petitioner's ability to withdraw his plea at a later date:

> [Counsel]:      You Honor, defense counsel is aware of none. But just let me state for the record I have preliminarily scored the guidelines pursuant to the information provided by [petitioner], in combination with the police reports, in order to calculate what his sentencing guidelines are to be. I've got them in the A grid at E-3, referencing 126 to 210 months, based on the information provided by [petitioner], in combination with reports. That is my scoring of the guidelines.
>
> [Court]:      You understand that's not technically part of the deal here, but you're relying on your counsel's accurate scoring of these guidelines, [petitioner], is that right?
>
> [Petitioner]:      No, I don't understand that actually, your honor.
>
> [Counsel]:      Your Honor, we went over the scoring of the guidelines.
>
> [Court]:      [Prosecutor], did you go over the guidelines as well?

| | |
|---|---|
| [Prosecutor]: | I did not, but we certainly expect the Court's going to sentence within the guidelines.  We have no opposition to that, given the requirements of the law. |
| [Court]: | Given [petitioner's] statements here today about his reliance, in the event the guidelines are other than 126 to 210, and I somehow were to sentence within guidelines for 12 [sic] to 210, would you be willing to let him withdraw his plea? |
| [Prosecutor]: | The Court said that if the guidelines turn out to be something different? |
| [Court]: | Yes. |
| [Prosecutor]: | We don't have -- we have no objection to the withdrawal of the plea under those circumstances. |
| [Court]: | All right.  Does that satisfy you, [petitioner]? |
| [Petitioner]: | That's satisfactory, sir. |
| [Court]: | All right, thank you.  Any other inducements to pleading guilty, other than what we've talked about here today, [petitioner]? |
| [Petitioner]: | No, sir. |

*Id.* at 17-18.

At the conclusion of the plea hearing, the court accepted petitioner's plea stating that "the pleas of guilty to two separate counts of armed robbery and two separate counts of felony firearm have been freely and voluntarily entered and that there is satisfactory factual bases to support those pleas." Plea Trans. at 18-19 (docket no. 19).  The court further noted that this case "was not exactly a day of trial plea" because the trial scheduled for that day was in No. 02-0823, which was dismissed as part of the plea agreement. *Id.* at 19.

At the sentencing on May 13, 2003, petitioner's counsel advised the court that petitioner now claimed that he did not understand the sentencing guidelines:

10

> . . . I believe I stated at the plea that the scoring of the guidelines that I have was between 10 and 18 years at the minimum, and [petitioner] I believe is now claiming that he thought that the sentence would not exceed 18 years, and that the minimum would not go below 10 years, so he thought he was going to be serving a sentence of approximately 10 to 18. And having done this a number of times, as this Court knows, I believe I thoroughly explained to him that the minimum, your Honor, the minimum was the minimum guideline range, and that the maximum would be set by the Court, at the Court's discretion, pursuant to how the Court felt how much maximum the case should deserve, and I think [petitioner] is having some difficulty with that today. I didn't have this difficulty with him before, and I'm not sure if [petitioner] wishes to address the Court with respect to OV 13 or what he thought he was going to get.

Sent. Trans. at 5-6 (May 13, 2003) (docket no. 19).

Petitioner explained his position to the court:

[Petitioner]: . . . I was like under the impression that I would be sentenced within 10 to 18 years, but, I mean, when I first started this procedure back in November, November the 6th, I came to court, I was offered a 15 to 30 plea, and I mean, what I'm basically agreeing to now I've just found out that you could, if you wanted, you could sentence me up to a maximum of 30 years.

[Court]: I could sentence you to more than that if I wanted to.

[Petitioner]: Yes, sir.

[Court]: Sentence you all the way up to life.

[Petitioner]: Yes, sir. I mean, when I spoke to you on the 10th, though, it's on court record that you basically -- you would stay within the guidelines, what was said on the 10th.

[Court]: Guidelines apply to only the minimum part of the sentence.

[Petitioner]: Yes, sir. See, I wasn't understanding that at the time.

*Id.* at 6-7.

Petitioner also objected to the use of a 1998 conviction for armed robbery in scoring the state sentencing guidelines, because the conviction was more than five years old. *Id.* at 7-9. The

11

court overruled this objection, noting that the 1998 conviction fell within the five year period, and even if the court erred in counting this conviction, petitioner had other offenses that would reach the same score. *Id.* at 9. In addition, petitioner acknowledged that he had eight years and six months to serve on his parole from a conviction in Kentucky. *Id.* at 11. After consideration of these matters, the trial court sentenced petitioner to 12 to 25 years on each armed robbery count (the two armed robbery charges to be served concurrently), consecutive to two years on each felony firearm count (the two felony firearm charges to be served concurrently). *Id.* at 12. The court also advised petitioner that the Michigan sentences would run consecutive to the "Kentucky time." These sentences were within, and at the lower end of, the guidelines. Sent. Trans. at 12-13.

The crux of petitioner's claim is that he received a longer sentence than anticipated. In this regard, petitioner stated in an affidavit that counsel guaranteed that he would not be serving more than 10 to 18 years. *See* Affidavit (Aug. 24, 2005) attached to petition.

Based on the record in this case, petitioner has failed to overcome the heavy burden necessary to overturn the state court's findings that his guilty plea was a free and voluntary act. *See Garcia*, 991 F.2d at 326, 328. "Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." *Baker v. United States*, 781 F.2d 85, 92 (6th cir. 1986), *quoting United States v. Crusco*, 536 F.2d 21, 24 (3rd Cir. 1976). Subjective exceptions of a particular sentence do not provide the basis for habeas corpus relief. *Nichols v. Berini,* 818 F.2d 554, 558 (6th Cir. 1987). As the Supreme Court observed in *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), "[s]olemn declarations in open court" made by a criminal defendant during a plea hearing "carry a strong presumption of verity." While petitioner now contends that he was confused and did not understand the nature of the sentencing

12

guidelines, the record does not support him. A review of the plea transcript shows that petitioner understood the terms of the plea agreement, that he was aware of the possible maximum sentences for the charged crimes, and that he entered into the plea voluntarily and intelligently. The trial court advised petitioner that he could be sentenced up to life imprisonment on the charges. Plea Trans. at 8-19. When petitioner said at his plea that his understanding of the guidelines was "ten to eighteen years," the judge specifically responded, "<u>I don't know what they are, whether they've been scored correctly or not</u> . . . <u>I haven't looked at the guidelines.</u>" *Id.* at 12 (emphasis added). The judge also told petitioner that his attorney's calculations were not "part of the deal here," and the prosecutor also said he had not gone over the guidelines either. *Id.* at 17-18. Clearly, petitioner had no reasonable expectation at that point that his attorney's estimates would be binding on the court. The most petitioner could have carried away from the plea was an expectation that he would be sentenced within the guidelines as they were finally calculated, and ultimately that is what occurred. Indeed, petitioner testified at his plea that he understood that he could receive a <u>life</u> sentence, that he had no agreement other than the plea agreement as stated on the record, that he was pleading freely and voluntarily, and that he had not been threatened to plead guilty. *Id.* at 13-14, 17-18.

      A petitioner's subjective expectation of a particular sentence does not provide the basis for habeas corpus relief from an otherwise valid guilty plea. *Nichols, supra; see Broce*, 488 U.S. at 572 (the possibility that petitioner's plea might have been influenced by an erroneous assessment of the sentencing consequences if he had proceeded to trial did not render his plea invalid). The Sixth Circuit has rejected claims by habeas petitioners to set aside guilty pleas due to "sentence confusion" where the plea transcript demonstrates that the petitioner states on the record that he is pleading voluntarily of his own free will. *Alford v. Brigano*, 67 Fed. Appx. 282, 285 (6th

Cir. 2003); *Ashbaugh v. Gundy*, 244 Fed. Appx. 715, 717-18 (6th Cir. 2007). For example, in *Boyd v. Yukins*, 99 Fed. Appx. 699, 703 (6th Cir. 2004), the petitioner claimed that her plea was not knowing or voluntary because her counsel allegedly told her that the 8 to 15 years sentencing range represented the entirety of her sentence, rather than the range of minimum sentences. *Id.* The Sixth Circuit rejected the argument, because the trial court remedied any such misconception by informing the petitioner of the potential maximum and minimum sentences. *Id.* Similarly, the trial court in this instance remedied any misconceptions held by petitioner by informing him of the maximum (life) and minimum penalties applicable to the charged offenses. Plea Trans. at 8, *supra.*

The fact that petitioner was faced with difficult, unattractive or distasteful options does not render his guilty plea involuntary. "[A] guilty plea is not rendered involuntary merely because it was entered to avoid harsh alternatives such as prosecution on additional charges." *United States v. Hussey*, 182 Fed.Appx. 150,152-53 (4th Cir. 2006). Here, petitioner was a defendant in three separate criminal prosecutions, charged with seven felonies and subject to sentencing as a second felony offender, all in addition to serving a lengthy parole for an armed robbery in Kentucky. Given these circumstances, petitioner's decision to plead guilty to two counts of armed robbery and two counts of felony firearm appeared to be a reasonable option and represented "a voluntary and intelligent choice among the alternative courses of action open to [him]." *Hill*, 474 U.S. at 56. It is telling that petitioner argues in his petition, "that he was pressured into taking a plea" the day of trial, discussed *infra,* since this strongly suggests that petitioner's motivation for appeal is one of buyer's remorse rather than because he did not understand, albeit belatedly, that his attorney's guideline estimate was not binding on the court.

14

### C. Ineffective assistance of trial counsel

Petitioner contends that his trial counsel was ineffective because counsel pressured him into taking a plea on the day of his trial and failed to visit him in the Kent County Jail when "he was seriously thinking of withdrawing his plea" and wanted to withdraw the plea because he did not understand the sentencing guidelines. Petition at 29.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington.* 466 U.S. 668, 687 (1984). The Supreme Court has set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

The *Strickland* standard has been modified when evaluating alleged ineffective assistance of counsel related to a guilty plea. *See Hill*, 474 U.S. at 57.

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 58-59.

15

### i. Petitioner's claim that he was pressured to plead guilty

As discussed, petitioner testified during his plea that no one threatened him to plead guilty and that his plea was given freely and voluntarily. Plea Trans. at 13-14. A criminal defendant's statement on the record "that he had not been coerced or threatened into pleading guilty . . .is strong evidence of the voluntariness of his plea." *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991). Petitioner provides no reason for this court to ignore his testimony given at the plea hearing. Accordingly, there is no basis to support petitioner's claim that he was pressured to plead guilty.

### ii. Petitioner's claim that he intended to withdraw his guilty plea

Next, petitioner contends that trial counsel was ineffective for failing to visit him at the jail after he pled guilty but before his sentencing. Petitioner states in his affidavit that "[h]ad my Attorney not given me the guarantee that I would be serving no more than 10 to 18 years I would not have plead guilty, and instead taken my case to trial." Petitioner's Aff. (Aug. 24, 2005). Petitioner also states that he sent counsel two letters dated April 4, 2003 and April 18, 2003, indicating his dissatisfaction with the plea. Petitioner supports his claims with two handwritten letters which he contends were sent to his trial counsel.[4] Assuming that petitioner actually sent these letters, and that counsel received them, the court finds that petitioner was not prejudiced by counsel's alleged actions.

---

[4] The authenticity of the two letters, dated April 4, 2003 and April 18, 2003, sent to petitioner's attorney is dubious. The letters are not photocopies, but appear to be original letters handwritten in pencil. Petitioner provides no records indicating that he sent the letters while in jail awaiting sentencing. More importantly, petitioner did not mention the letters at his sentencing on May 13, 2003, in his application for leave to file an appeal with the Michigan Court of Appeals, or in his application for leave to appeal to the Michigan Supreme Court. Rather, these two self-serving letters first appear as attachments to petitioner's habeas corpus petition filed in this court.

In the April 4th letter, petitioner states in pertinent part that "it was agreed that I would plea to no more than 10 to 18 years. . . [h]owever, I feel that I can get a better deal, by legally shaving some points off my sentencing guidelines." Then, in his April 18th letter, petitioner asks counsel to visit him at the jail because he was "considering withdrawing my plea and negotiating a plea agreement with a 10 year cap." Neither of these letters requested counsel to file a motion to withdraw the plea prior to sentencing. Rather, the letters suggest strategies for reducing his guidelines score or renegotiating a 10-year maximum sentence.

The record reflects that counsel communicated with petitioner prior to sentencing, as evidenced by counsel's representation to the court that petitioner had misgivings about his guilty plea. Petitioner did not object to counsel's statements and did not seek to withdraw his guilty plea at that time. Furthermore, even if petitioner had directed his counsel to withdraw the guilty plea (which petitioner did not do), he would not have been entitled to withdraw his plea on the grounds that he misunderstood the sentencing guidelines or the likely penalty for pleading guilty. *See United States v. Ruiz*, 536 U.S. 622, 630 (2002) (a court may accept a guilty plea despite various forms of misapprehension under which a defendant might labor, such as the quality of the State's case, the likely penalties, or the admissibility of a confession); *Boyd*, 99 Fed. Appx. at 703 (the defendant's misunderstanding that sentencing guidelines represented the actual sentence does not invalidate the guilty plea, when the trial court informed the defendant of the maximum and minimum penalties). Accordingly, petitioner's ineffective assistance of counsel claim should be denied.

### B. Unreasonable search and seizure

Finally, petitioner seeks habeas relief on the grounds that he was denied the right to be free from an unreasonable search and seizure and that his trial counsel failed to investigate this issue. Petitioner's claims are without merit. By pleading guilty, petitioner is barred from raising claims relating to other alleged constitutional violations that preceded the plea. As the Supreme Court explained in *Tollett*:

> The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. . . .
>
> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea. . . .

*Tollett*, 411 U.S. at 266-267. Petitioner entered a valid guilty plea. Accordingly, his claims regarding the alleged unreasonable search and seizure and his counsel's failure to file motions to suppress should be denied. *Id.*

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: August 4, 2008                    /s/ Hugh W. Brenneman, Jr.
                                         HUGH W. BRENNEMAN, JR.
                                         United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).